**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| INSTAMED PHARMACEUTICALS, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SARAH MORGAN, *et al.*,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO REMAND AND DENYING REQUEST FOR ATTORNEYS' FEES**<br><br>Case No. 2:26-cv-334-HCN<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

On April 21, 2026, Defendant Sarah Morgan removed this action to this court, invoking the court's diversity jurisdiction. *See* Dkt. No. 1. Defendant Dominique Maack and all three Plaintiffs, however, are alleged to be citizens of Utah. *See id.* at 3; Dkt. No. 8 at 10, 17. The Plaintiffs accordingly move to remand this case to state court for lack of diversity jurisdiction. *See* Dkt. No. 8. They also seek an award of the attorneys' fees they have incurred in connection with the proceedings in this court on the asserted ground that the case was removed here without an objectively reasonable basis. *See id.* In response, Ms. Morgan argues that Ms. Maack is fraudulently joined or a nominal defendant and thus should be disregarded for jurisdictional purposes. *See* Dkt. No. 1 at 3.

The court concludes that it lacks subject matter jurisdiction over this action because Ms. Maack is neither fraudulently joined nor a nominal defendant. The court accordingly remands the

case to state court. Because the motion to remand presents close questions, however, the court will not award the Plaintiffs the attorneys' fees they have incurred as a result of the removal.[1]

**I.**

"Under 28 U.S.C. § 1441(a), a defendant may remove a civil action initially brought in state court if the federal district court could have exercised original jurisdiction." *Long v. Halliday*, 768 F. App'x 811, 813 (10th Cir. 2019) (cleaned up). "However, a federal court must remand a removed action back to state court 'if at any time before final judgment it appears that the district court lacks subject matter jurisdiction.'" *Id.* (cleaned up) (quoting 28 U.S.C. § 1447(c)).

"[F]raudulent joinder is an exception to the complete diversity requirement . . . ." *Id.* "To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (cleaned up). The latter type of fraudulent joinder occurs, for instance, "when there is no cause of action stated against a resident defendant or when no cause of action exists." *Long*, 768 F. App'x at 813.

---

[1] The Plaintiffs have purported to file an amended complaint that would expressly assert a claim against Ms. Maack and thus make clear that she is neither fraudulently joined nor a mere nominal defendant. *See* Dkt. No. 44. If the amended complaint has been properly filed, this action almost certainly must be remanded to state court. *See Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025). But in light of 28 U.S.C. § 1447(e), it is not clear that the Plaintiffs could amend as of right under Federal Rule of Civil Procedure 15(a), especially if Ms. Maack was not properly joined as a party in the complaint as it existed at the time Ms. Morgan removed this action. The court need not decide whether amendment was proper, however, because it concludes that Ms. Maack is properly joined and that this action is subject to remand for lack of subject matter even if the purported amended complaint is disregarded and the motion to remand is decided based only on the complaint as it existed at the time of removal.

"[I]n cases where fraudulent joinder is claimed," the Tenth Circuit has "directed courts to pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Nerad v. AstraZeneca Pharms., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006) (cleaned up). "In so doing, [a] court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." *Id.* "A 'reasonable basis' means just that: the claim need not be a sure thing, but it must have a basis in the alleged facts and the applicable law." *Id.*

For fraudulent joinder disputes, a court "must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party." *Montano v. Allstate Indem.*, 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. 2000) (unpublished table decision) (cleaned up). "This standard is more exacting [for the defendant] than that for dismissing a claim" under Federal Rule of Civil Procedure 12(b)(6). *Id.* at *2. "The defendant seeking removal bears a heavy burden of proving fraudulent joinder . . . ." *Dutcher*, 733 F.3d at 988 (cleaned up).

## II.

The parties' dispute appears to turn on whether the Plaintiffs state a claim against Ms. Maack in Count VI, which alleges the misappropriation of trade secrets. *See* Dkt. No. 8 at 5, 13; Dkt. No. 27 at 7. "Under [Utah's] Uniform Trade Secret Act, a prima facie case of misappropriation is established on the basis of two essential elements: existence of a protectable 'trade secret' of a plaintiff and demonstration of 'misappropriation' by a defendant." *InnoSys, Inc. v. Mercer*, 364 P.3d 1013, 1018 (Utah 2015) (quoting Utah Code § 13–24–2). "[M]isappropriation may be established upon proof of either unlawful disclosure or unlawful acquisition." *Id.*

**A.**

Ms. Morgan argues that the Plaintiffs fail even to attempt to state a claim against Ms. Maack and thus that Ms. Maack is fraudulently joined as a defendant. This is so, Ms. Morgan argues, because the Plaintiffs expressly assert Count VI against only "Sarah Morgan and Competing Business Defendants," not against Ms. Maack, and because no actions taken by Ms. Maack are referenced in this Count. Dkt. No. 27 at 7. The court disagrees.

To be sure, Ms. Morgan is correct that the phrase "Competing Business" is defined in the complaint as the business Ms. Morgan "began planning and establishing" "[i]n or about May 2025, while still serving as CEO of InstaMed," Dkt. No. 1-1 ¶ 63—not "as Maack or any other individual," Dkt. No. 27 at 7. But the phrase "Competing Business *Defendants*" is *not* defined in the complaint. Further, it makes little sense to give the latter, undefined phrase the same definition as the former defined phrase given that (1) the "Competing Business" is not itself expressly named as a defendant to this action, and (2) the latter phrase is plural rather than singular and is therefore naturally understood to sweep more broadly than the one "Competing Business" identified in the complaint. And because the Plaintiffs allege that Ms. Maack "left InstaMed and joined the Competing Business," Dkt. No. 1-1 ¶ 79, she appears to be associated with the "Competing Business" and thus to fit easily within the natural meaning of the undefined phrase, "Competing Business Defendants."

Further, it is unclear who else could be the "Competing Business Defendants" apart from Ms. Maack and perhaps some of the John Doe defendants (who are identified, *inter alia*, as "individuals and entities . . . who, upon information and belief, participated in, facilitated, or benefited from the wrongful conduct alleged herein"). *Id.* ¶ 7. Nor is the phrase "Competing Business Defendants" naturally read to include only John Doe defendants and to exclude Ms.

4

Maack given that Count IX is expressly asserted "[a]gainst Sarah Morgan *and Doe Defendants*." *Id.* at 27 (emphasis added). Had the Plaintiffs intended Count VI to be limited in the same manner, there is no apparent reason why they would not have used the same language there. After all, where a legal "document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." Antonin Scalia & Bryan A. Garner, *Reading Law* 170 (2012).

Finally, even if Count VI does not itself include factual allegations specifically referencing Ms. Maack, the rest of the complaint certainly does include such allegations, *see*, *e.g.*, Dkt. No. 1-1 ¶¶ 6, 14, 68, 76, 79, 86, and the Plaintiffs explicitly incorporate those allegations into Count VI, *see id.* ¶ 130. Those allegations go a long way toward stating a claim for trade-secrets misappropriation against Ms. Maack, as the court will next explain.

For these reasons—and because it "must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party," *Montano*, 211 F.3d 1278, 2000 WL 525592, at *1 (cleaned up)—the court concludes that the Plaintiffs do seek to state a claim against Ms. Maack in Count VI.

**B.**

The court next concludes, based on the complaint and the evidence the Plaintiffs have identified, that there is a reasonable basis to believe they might succeed on their claim for trade-secrets misappropriation against Ms. Maack.

First, the Plaintiffs allege the existence of trade secrets. A "[t]rade secret" is defined as "information" that "(a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who

can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Utah Code § 13-24-2(4).

The Plaintiffs allege that their trade secrets comprise, among other things, confidential customer information such as "[c]ustomer lists, contract information, and purchasing histories." Dkt. No. 1-1 ¶ 59. And as the Utah Supreme Court has observed, "where the customers are not known in the trade or are discoverable only by extraordinary efforts courts have not hesitated to protect customer lists and files as trade secrets." *Microbiological Rsch. Corp. v. Muna*, 625 P.2d 690, 700 (Utah 1981) (cleaned up).

The Plaintiffs also allege that their confidential customer information meets the two elements of the statutory definition. First, the Plaintiffs allege that "InstaMed's Trade Secrets derive independent economic value, actual or potential, from not being generally known to other persons who can obtain economic value from their disclosure or use." Dkt. No. 1-1 ¶ 60. Next, the Plaintiffs allege that "InstaMed undertook reasonable efforts to maintain the secrecy of its Trade Secrets, including . . . [l]imiting access to confidential information on a need-to-know-basis," "[r]equiring employees and contractors to sign nondisclosure and confidentiality agreements," and "[i]mplementing password protections and access controls on electronic systems." *Id.* ¶ 61. Although at least some of these allegations might be too conclusory to accept as true in other contexts, *see, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009), the court concludes they are sufficient in the more forgiving context of a fraudulent joinder dispute.

Second, the Plaintiffs allege that Ms. Maack misappropriated their trade secrets. "Misappropriation" is defined, in relevant part, as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means . . . ." Utah Code § 13-24-2(2)(a). And "improper means" is defined to "include[] theft,

6

bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." *Id.* § 13-24-2(1).

In the complaint, the Plaintiffs allege that they "[r]equir[e] employees and contractors to sign nondisclosure and confidentiality agreements," Dkt. No. 1-1 ¶ 61, and this requirement, of course, appears to have applied to both Ms. Morgan and Ms. Maack, *see id.* ¶¶ 5–6, 35, 37; Dkt. No. 29-1 ¶ 7. Indeed, the Plaintiffs allege not only that Ms. Morgan was formerly "CEO and President of InstaMed," Dkt. No. 1-1 ¶ 34, but also that "InstaMed employed or contracted with valuable employees, sales representatives, and contractors, including Dominique [Maack] and others," and that "[t]hese individuals had employment, contractor, or business relationships with InstaMed and owed duties of loyalty and performance to the Company," *id.* ¶¶ 76–77.

The Plaintiffs allege that Ms. Morgan nevertheless "disclosed InstaMed's Trade Secrets to third parties, including Dominique [Maack] and other employees or contractors she recruited to join the Competing Business" and that she "has used and continues to use InstaMed's Trade Secrets in the operation of the Competing Business." *Id.* ¶¶ 67–68. The Plaintiffs also allege that Ms. Morgan "misappropriated" the trade secrets "by . . . [c]opying or downloading customer lists, pricing data, purchase orders, and other confidential files from InstaMed's computer systems; [u]sing InstaMed's customer relationships and contacts to solicit business for the Competing Business; [d]isclosing InstaMed's pricing, formulations, and business methods to the Competing Business; [a]nd otherwise exploiting information she learned as InstaMed's CEO for the benefit of the Competing Business." *Id.* ¶ 65.

Surely the Plaintiffs' allegations that Ms. Maack previously worked with InstaMed and was required to sign nondisclosure and confidentiality agreements during her time there, coupled with the Plaintiffs' allegations regarding Ms. Morgan's flagrant misappropriation and ongoing

use of InstaMed's trade secrets in the operation of the Competing Business, support a reasonable inference that Ms. Maack knew or had reason to know that the trade secrets she acquired from Ms. Morgan were in turn acquired by Ms. Morgan through improper means.

Further, the Plaintiffs have submitted evidence that directly bolsters these inferences and otherwise provides ample grounds to conclude that they may succeed on their claim for trade secrets-misappropriation against Ms. Maack. According to declarations submitted by Mr. Bartel and Mr. Gibbs, Ms. Maack downloaded InstaMed's customer information on March 13, 2026—while she was still an InstaMed employee—and sent the confidential information to Ms. Morgan. *See* Dkt. No. 14-1, Ex. 1 ¶¶ 31–35; Dkt. No. 32 ¶¶ 61–62. These declarants further aver that Ms. Maack simultaneously sent Ms. Morgan a "'walkthrough' video" demonstrating "how to use and access the information in InstaMed's confidential customer list" that was "clearly intended to assist Ms. Morgan in using and extracting the maximum amount of information from the customer list." Dkt. No. 14-1, Ex. 1 ¶ 39; *see also* Dkt. No. 32 ¶ 62. Strikingly, Mr. Gibbs avers that Ms. Maack emailed this information to Ms. Morgan *after* a board meeting had been scheduled for March 18 to discuss Ms. Morgan's position in the company and less than one hour *before* Ms. Morgan communicated her intent to exit the company to the Plaintiffs and offered a buyout. *See* Dkt. No. 32 ¶¶ 60–63. Mr. Bartel and Mr. Gibbs also aver that on Sunday, March 22—outside normal business hours and four days after InstaMed's board terminated Ms. Morgan as CEO—Ms. Maack downloaded the customer information again before resigning from InstaMed the next day. *See* Dkt. No. 14-1, Ex. 1 ¶¶ 41–42; Dkt. No. 32 ¶¶ 64–67; Dkt. No. 31 at 8.

In short, the Plaintiffs offer allegations and evidence that Ms. Maack "wrongfully downloaded InstaMed's customer lists and other confidential information," "provided a

'walkthrough' to [Ms.] Morgan to assist the theft" of trade secrets, and "promptly left InstaMed and joined the competing enterprise." Dkt. No. 8 at 15. If true, this course of conduct almost certainly constitutes trade-secrets misappropriation under Utah law.

To be sure, Ms. Morgan and Ms. Maack have submitted declarations disputing at least some of the Plaintiffs' evidence. *See* Dkt. No. 28-1; Dkt. No. 29-1. But for current purposes, the court "must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party." *Montano*, 211 F.3d 1278, 2000 WL 525592, at *1 (cleaned up).

### III.

The Plaintiffs and Ms. Morgan briefly debate another issue closely related to fraudulent joinder—whether Ms. Maack is a mere nominal defendant. "[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Brazell v. Waite*, 525 F. App'x 878, 881 (10th Cir. 2013) (cleaned up).

According to Ms. Morgan, Ms. Maack is a nominal defendant *because* no cause of action is stated against her. *See* Dkt. No. 1 at 3; Dkt. No. 27 at 5. Her argument is thus identical to her fraudulent-joinder argument, which the court has already rejected. Further, the court agrees with the Plaintiffs that Ms. Maack is a real party to the controversy because "[t]he requested relief includes orders prohibiting continued use or disclosure of InstaMed's Trade Secrets and compelling the return or destruction of such information" and this relief "necessarily reaches all participants in the competing venture, including [Ms.] Maack." Dkt. No. 8 at 16; *see also* Dkt. No. 1-1 at 35–37.

**IV.**

Finally, the court denies the Plaintiffs' request for attorneys' fees. "An order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). But "[a]bsent unusual circumstances, courts may award attorney's fees . . . only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).

Although the court ultimately disagrees with Ms. Morgan, the court cannot say that she "lacked an objectively reasonable basis for seeking removal," given the oblique manner in which the Plaintiffs frame their claim for trade-secrets misappropriation against Ms. Maack and their seeming failure even to attempt to assert any other claims against her.

\*     \*     \*

For the foregoing reasons, Docket Number 8, Plaintiff's Motion to Remand, Request for Expedited Decision, and Request for Attorney Fees, is **GRANTED** in part and **DENIED** in part. This action is **REMANDED** to the District Court for the Third Judicial District in and for Salt Lake County, Utah. The Plaintiffs' request for attorneys' fees is **DENIED**.

**IT IS SO ORDERED.**

Dated this 15th day of July, 2026.

BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge

10